UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAY DELGADO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARKETSOURCE, INC.,<br><br>　　　　Defendant. | Case No. 17-CV-07370-LHK<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 37 |

Plaintiff Ray Delgado ("Plaintiff") brings this putative class action against Defendant Marketsource, Inc. ("Defendant"). Plaintiff alleges that Defendant violated California Labor Code §§ 201 and 203. Before the Court is Plaintiff's motion for class certification. Having considered the parties' briefing, the relevant law, and the record in this case, the Court DENIES Plaintiff's motion for class certification.

## I.  BACKGROUND

### A. Factual Background

Defendant is a company that "provide[s] outsource sales and marketing for other companies." ECF No. 37-1, Ex. D, Deposition of Melissa Wiley ("Wiley Dep."), 25:16–18. In part, Defendant "employs individuals to sell cell phones out of kiosks at third-party retail stores."

1
Case No. 17-CV-07370-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

ECF No. 42-3, Declaration of Gary Slate ("Slate Decl."), ¶ 3. Defendant employed Plaintiff as a district manager from sometime in April 2013 until April 18, 2017. ECF No. 37-5, Declaration of Ray Delgado ("Delgado Decl."), ¶ 2. As a district manager, Plaintiff supervised employees of Defendant "who sold cellular phones inside of Target retail locations" in California. *Id.* ¶ 3. Plaintiff "was responsible for staffing these sales departments, as well as managing inventory and tracking supplies." *Id.* Plaintiff terminated at least three of Defendant's employees during his employment with Defendant. ECF No. 42-1, Ex. E, Deposition of Ray Delgado ("Delgado Dep."), 112:21–117:20; 134:10–22.

### 1. Defendant's Policies and Practices for Paying Final Wage Statements

Defendant pays its employees their wages via either electronic direct deposit or a paper check. Wiley Dep. 32:11–12. When Defendant fires an employee, Defendant distributes the employee's final paycheck through similar means, via either direct deposit or a paper check sent overnight with Federal Express ("FedEx"). *Id.* at 162:23–25. According to Defendant's published policies, Defendant pays fired employees their final wages "in accordance with state law." ECF No. 42-1, Ex. B; *see also* Wiley Dep. 135:2–15 (testifying that Defendant's practice is for a fired employee to "have a check that day"). California law requires Defendant to pay fired employees their final wages "immediately." Cal. Labor Code § 201.

In order to comply with California law, Defendant maintains the following policies and practices. Before a manager decides to terminate an employee, Defendant requires the manager to receive approval from Defendant's human resources department. ECF No. 42-4, Declaration of Melissa Wiley ("Wiley Decl."), ¶ 9. After that conversation, the manager must complete an Employee Status Form ("ESF"), which documents the employee's name, termination date, and the reason for the termination. Wiley Dep. at 149:1–18. Defendant's human resources department must authorize the ESF. *Id.* at 149:23–25. Eventually, the ESF is sent to Defendant's payroll department to prepare the employee's final paycheck. *Id.* at 150:2–6 (testifying that in California, an ESF form is "flagged as high priority"); *see also* Wiley Decl. ¶ 10 (attesting that human resources consults on the employee's termination date so that Defendant's payroll department has

the advance notice necessary to "compile all information necessary to pay the final wages on the last date of employment"). When Defendant pays final wages by direct deposit, the "final wages are typically . . . processed the day before the termination date such that the funds are in the employee's bank account on the last day of employment." Wiley Decl. ¶ 11. If the employee's use of direct deposit might delay an employee's receipt of final wages, or if the employee receives her regular wages by paper check, Defendant's practice is to issue a paper check and send it to the fired employee via overnight FedEx. *Id.*

Defendant's documents mirror Wiley's testimony. For example, Defendant's Managers Guide to Paying Hourly Employees includes instructions regarding the payment of final wages. ECF No. 42-3, Ex. A ("Managers Guide"). The Managers Guide informs managers that "in some states"—including California—"an employee is due his or her final wages immediately upon termination." *Id.* at 1, 4. As a result, the Managers Guide instructs managers to contact human resources "as soon as possible . . . when the manager makes the decision to terminate an employee." *Id.* at 1. In addition, Plaintiff received an email from a payroll specialist reminding him to approve timecards for to-be-fired employees when submitting the ESF for that employee's firing because "CA is immediate payout state." ECF No. 42-1, Ex. G. Finally, Defendant's payroll department maintains an internal document that lists "immediately" as the payout date for involuntarily terminated employees in California. ECF No. 42-4, Ex. C.

### 2. Plaintiff's Termination

On April 18, 2018, Plaintiff had a meeting with his supervisor, Gary Slate, at which Slate informed Plaintiff of his termination. Delgado Decl. ¶ 5. Plaintiff was fired for misconduct. ECF No. 37-1, Declaration of Nicholas Rosenthal ("Rosenthal Decl."), Ex. A (Defendant's record showing "misconduct" as reason); *see also* Slate Decl. ¶¶ 6–7 (explaining that Defendant terminated Plaintiff after an investigation into several employee complaints). Plaintiff did not receive his final wage statement until April 19, 2017. Delgado Decl. ¶ 7; *see also id.*, Ex. A (Plaintiff's bank records). At this point, the parties' accounts of Plaintiff's termination diverge.

Plaintiff asserts that Plaintiff's termination was effective April 18, 2017. For support,

3

Case No. 17-CV-07370-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff points to the ESF for Plaintiff's termination, which lists April 18, 2017 in the "effectiveDate" field. ECF No. 37-1, Ex. A.

Defendant contends that Plaintiff was terminated effective Wednesday, April 19, 2017. In an email sent before Plaintiff's termination, Plaintiff's manager, stated that "[t]he ESF and plan was for Wednesday." ECF No. 42-3, Ex. C. Slate had originally planned to meet with Plaintiff on Wednesday, but Plaintiff was unavailable that day, so Slate and Plaintiff instead met on Tuesday. *Id.*; Slate Decl. ¶ 8. Slate believes that he informed Plaintiff that Defendant was terminated effective April 19, 2017. Slate Decl. ¶ 10. Defendant also points to a confirmation email Slate received when first submitting Plaintiff's ESF on April 12, 2017, in which the effective date for Plaintiff's termination was listed as April 19, 2017. *Id.*, Ex. D. The email confirmation containing Plaintiff's ESF includes, as part of a "Termination Checklist," the instruction that "timely timecards are required so that we can ensure the processing of payroll remains compliant" for immediate payout states, including California. *Id.* (emphasis omitted).

### B. Procedural History

On November 30, 2017, Plaintiff filed a putative class action Complaint against Defendant in California Superior Court for the County of Santa Clara. ECF No. 1, Ex. 1 ("Compl."). Plaintiff's Complaint alleged claims for (1) failure to provide accurate itemized wage statements in violation of California Labor Code § 226(a); (2) failure to pay all wages owed immediately upon termination in violation of California Labor Code §§ 201, 203; and (3) civil penalties pursuant to the California Private Attorney General's Act ("PAGA"), California Labor Code § 2698 *et seq*. *Id.* ¶¶ 29–40.

On December 29, 2017, Defendant removed Plaintiff's Complaint to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332, 1453. ECF No. 1.

On August 1, 2018, the parties filed a stipulation to strike those portions of Plaintiff's complaint alleging that Defendant violated California Labor Code § 226(a). ECF No. 26. In addition, the parties stipulated to strike as a basis for Plaintiff's PAGA claim Plaintiff's § 226(a) allegations. *Id.* at 2. Then, on September 5, 2018, the parties filed a stipulation to dismiss

4

Plaintiff's claim for violation of § 226(a) and to strike Plaintiff's §226(a) allegations from Plaintiff's PAGA claim. ECF No. 33.

On September 24, 2018, Plaintiff filed a motion to certify a class of "All employees who were employed by Defendant in the State of California at any time from November 30, 2016, through the present, whose employment was terminated." ECF No. 37 ("Mot."). On October 29, 2018, Defendant filed an opposition. ECF No. 42 ("Opp."). On November 19, 2018, Plaintiff filed his reply. ECF No. 43 ("Reply").

## II. LEGAL STANDARD

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23 does not set forth a mere pleading standard. To obtain class certification, plaintiffs bear the burden of showing that they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate … compliance with the Rule[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

If all four prerequisites of Rule 23(a) are satisfied, the Court must also find that the plaintiff "satisf[ies] through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The Court can certify a Rule 23(b)(1) class when plaintiffs make a showing that there would be a risk of substantial prejudice or inconsistent adjudications if there were separate adjudications. Fed. R. Civ. P. 23(b)(1). The Court can certify

5

a Rule 23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Finally, the Court can certify a Rule 23(b)(3) class if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim[.]'" *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Dukes*, 564 U.S. at 351); *see also Mazza*, 666 F.3d at 588 ("'Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23.'" (quoting *Zinser*, 253 F.3d at 1186)). This "rigorous" analysis applies to both Rule 23(a) and Rule 23(b). *Comcast*, 569 U.S. at 34 (stating that Congress included "addition[al] ... procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members (e.g., an opportunity to opt out)" and that a court has a "duty to take a 'close look' at whether common questions predominate over individual ones").

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* If a court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

### III. DISCUSSION

Plaintiff seeks to certify a class on Plaintiff's cause of action for a violation of California

6

Case No. 17-CV-07370-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Labor Code §§ 201, 203. Mot. at 10.[1] California Labor Code § 201 provides, "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Labor Code § 201(a). In turn, California Labor Code § 203 provides that if an employer "willfully fails to pay . . . in accordance with Section[] 201 . . . any wages of an employee who is discharged or quits, the wages of the employee shall continue as a penalty" for not more than thirty days. Cal. Labor Code § 203(a). Courts refer to claims under the foregoing Labor Code provisions as claims for "waiting time penalties." *Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 610 (S.D. Cal. 2010); *see also Harris v. Best Buy Stores, L.P.*, 2018 WL 3932178, at *6 (N.D. Cal. Aug. 16, 2018) (addressing motion to certify "Waiting Time Subclass" for claims under California Labor Code §§ 201–03).

Defendant raises several arguments for why class certification is unwarranted. Primarily, Defendant contends that Plaintiff has not satisfied the Rule 23(a)(2) commonality requirement or the Rule 23(b)(3) predominance requirement because Plaintiff has identified no question common to the class. Opp. at 17. Defendant also contends that Plaintiff has not satisfied the Rule 23(a)(3) typicality requirement because "there is nothing typical about the unique circumstances" of Plaintiff's termination and final wage payment. *Id.* at 22. Finally, Defendant contends that Plaintiff—the only named plaintiff—is an inadequate class representative under Rule 23(a)(3) because by his own admission, Plaintiff personally fired multiple class members. *Id.* at 23. The Court agrees on all points. Therefore, the Court DENIES Plaintiff's motion for class certification.

**A. Rule 23(a) Analysis**

"Parties seeking class certification must satisfy each of the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the requirements

---

[1] Plaintiff's motion states that Plaintiff seeks to certify a class of employees terminated since November 30, 2016. Mot. at 7. Defendant's opposition operates on that assumption. Opp. at 16. On reply, Plaintiff clarifies that Plaintiff intended, consistent with Plaintiff's Complaint, to seek to certify a class of employees terminated since November 30, 2014, and that Plaintiff's reference to November 30, 2016 was merely a (significant) typo. Reply at 5 n.1. The scope of the proposed class is not material given the Court's denial.

7
Case No. 17-CV-07370-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

of Rule 23(b)." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017), *cert. denied sub nom. ConAgra Brands, Inc. v. Briseno*, 138 S. Ct. 313 (Oct. 10, 2017). Below, the Court explains why Plaintiff cannot satisfy the commonality, typicality, or adequacy requirements of Rule 23(a), nor the predominance requirement of Rule 23(b)(3).

### 1. Commonality and Predominance

Rule 23(a)(2) states that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if … there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy the commonality requirement, Plaintiffs must show that the class members have suffered "the same injury," meaning that class members' claims must "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Dukes*, 564 U.S. at 350 (quotation marks and citation omitted). Plaintiffs must demonstrate not merely the existence of a common question, but rather "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (quotation marks omitted) (emphasis in original). Nevertheless, the "common contention need not be one that will be answered, on the merits, in favor of the class." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (internal quotation marks omitted). Additionally, "for purposes of Rule 23(a)(2), even a single common question will do." *Dukes*, 564 U.S. at 359 (alteration and quotation marks omitted); *see also Mazza*, 666 F.3d at 589 ("[C]ommonality only requires a single significant question of law or fact.").

Rule 23(b)(3) permits certification of a class only if "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3)'s predominance requirement is "even more demanding than Rule 23(a)." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 963 (9th Cir. 2013) (quoting *Comcast*, 569 U.S. at 34). The Ninth Circuit has held that the predominance inquiry "focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022 (citation omitted). Thus, predominance concerns the degree to which "fact-intensive" and individualized

8

Case No. 17-CV-07370-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

inquiries predominate over questions common to the class. *Abdullah*, 731 F.3d at 965.

Plaintiff's motion in support of class certification identifies a single purported common question: "Does Defendant's common practice of paying final wages by Federal Express [("FedEx")] or direct deposit violate California Labor Code §§ 201-203[2] because the practice did not ensure that final wages would be received on the date of termination?" Mot. at 13. However, Plaintiff's proposed question does not satisfy Rule 23(a)(2)'s commonality requirement or Rule 23(b)(3)'s predominance requirement.

Plaintiff asserts an erroneous theory that the California Labor Code mandates physical hand delivery of final wages. For example, Plaintiff asserts that "[i]n accordance with Defendant's admitted practice, Plaintiff was not physically handed his final paycheck when he was fired." Mot. at 10. In his deposition, Plaintiff testified that an employee Plaintiff terminated did not receive his final pay because "[Plaintiff] didn't have a check for him." Delgado Dep. 114:4–6; *see also id.* at 115:15–23 (testifying for another employee, Plaintiff "didn't have a check for her that day of her termination"); *see also* Mot. at 7 (complaining that Defendant does not "physically hand[] the involuntarily terminated employee" their final wages).

Contrary to Plaintiff's erroneous theory, the California Labor Code explicitly authorizes direct deposit payment of final wages. The Labor Code provides that "the employer may pay the wages earned and unpaid at the time the employee is discharged . . . by making *a deposit* authorized pursuant to this subdivision, provided that the employer complies with the provisions of this article relating to the payment of wages upon termination." Cal. Labor Code § 213(d) (emphasis added). That subdivision authorizes an employer to "deposit[] wages due or to become due . . . in an account in any bank, savings and loan association, or credit union of the employee's choice." Cal. Labor Code 213(d). Clearly, California Labor Code § 213(d) authorizes employers

---

[2] Although Plaintiff's question references California Labor Code § 202, Plaintiff's Complaint does not allege a violation of § 202. Compl. ¶ 1. Plaintiff's motion for class certification also does not assert a violation of § 202, which concerns payment of final wages to employees who resign. Cal. Labor Code § 202. Plaintiff's motion seeks to certify a class only of employees subject to "involuntary termination" pursuant to California Labor Code §§ 201 and 203. Mot. at 11.

to pay final wages by direct deposit. Plaintiff does not dispute this.

Plaintiff in fact concedes the facial validity of Defendant's practice of paying final wages by direct deposit or FedEx. Reply at 5; *see also* Delgado Dep. at 114:9–21 (testifying to Plaintiff's understanding that Defendant's policy was to "pay people on the last day"). As long as Defendant prepares final wages in advance, paying final wages by direct deposit or FedEx overnight can timely deliver wages to a terminated employee on the date of termination. Thus, Defendant's practice to pay final wages by direct deposit or FedEx overnight is itself not determinative of whether a violation of California Labor Code §§ 201 and 203 has occurred. *See* Wiley Decl. ¶ 10 (attesting that Defendant's human resources department consults on the employee's termination date so that Defendant's payroll department has the advance notice necessary to "compile all information necessary to pay the final wages on the last date of employment"). When Defendant pays final wages to a fired employee, the "final wages are typically . . . processed the day before the termination date such that the funds are in the employee's bank account on the last day of employment." Wiley Decl. ¶ 11. Consistent with that practice, Plaintiff received an email from one of Defendant's payroll specialists reminding Plaintiff to approve the employee's timecards when submitting an employee termination form because "CA is immediate payout state." ECF No. 42-1, Ex. G.

Unsurprisingly, Plaintiff is unable to cite to a single instance where Defendant's practice caused a violation of California Labor Code §§ 201 and 203. As the Ninth Circuit has recently explained, "[w]hile commonality may be established based on a 'pattern of officially sanctioned . . . [illegal] behavior,' merely pointing to a pattern of harm, untethered to the defendant's conduct, is insufficient." *Civil Rights Educ. & Enf't Ctr. v. Hosp Properties Tr.*, 867 F.3d 1093, 1104 (9th Cir. 2017) (internal citation omitted) (alteration in original) ("*CREEC*"). Plaintiff has not identified any pattern of officially sanctioned illegal behavior or any pattern of harm. In fact, Plaintiff's own circumstances demonstrate that Defendant's direct deposit practice did not cause Defendant's alleged violation. Defendant planned to terminate Plaintiff on April 19, 2017 and arranged to have final wages delivered to Plaintiff on that date, but Plaintiff was unavailable on

10

April 19. Thus, Defendant met with Plaintiff on April 18, 2017, the day before the designated termination date. Slate Decl. ¶ 8. The parties disagree whether Plaintiff was terminated on the date of the meeting or effective as of the next day. However, even if Plaintiff is correct that he received his wages late, the evidence raises the inference that a last-minute change of termination date caused by Plaintiff's unavailability—not Defendant's practice—led to the late payment.

Thus, Plaintiff's own circumstances demonstrate that Defendant's payment of final wages by direct deposit or FedEx itself does not determine whether a violation of California Labor Code §§ 201 and 203 has occurred. Plaintiff's citation to *Brewer v. General Nutrition Corp.*, 2014 WL 5877695 (N.D. Cal. Nov. 12, 2014), is not persuasive because the plaintiffs in *Brewer* provided evidence of the employer's policy to "circumvent" the Labor Code and evidence of "a systematic failure to provide final paychecks timely," which could provide classwide proof. *Id.* at *9–10. Plaintiff, by contrast, has provided evidence of neither. Plaintiff does not identify *a single class member*, out of over 5,000, who suffered a violation because of Defendant's practice. Thus, Plaintiff has failed to prove by a preponderance of the evidence that Defendant's practice operates as "an unwritten, *de facto* policy of non-compliance that resulted in widespread [§ 201] violations." *CREEC*, 867 F.3d at 1104.

Therefore, Plaintiff's proposed question is not a "common contention" that determines whether class members have suffered the "same injury." *Dukes*, 564 U.S. at 350. Moreover, answering Plaintiff's question will not resolve an issue "that is central to the validity of each [claim] in one stroke." *Id.*; *see also Ochoa v. McDonald's Corp.*, 2016 WL 3648550, at *6 (N.D. Cal. July 7, 2016) (denying certification where the plaintiff employees offered no evidence of violations caused "by the application of a uniform policy, or by a consistent and widespread practice in the workplace").

Like Defendant, the defendant employers in *Harris*, 2018 WL 3932178, maintained a facially valid, uniform procedure for paying final wages, but the plaintiffs argued that defendants did not "inform managers and other employees when final wages must be paid to employees." *Id.* at *7. The district court rejected the plaintiffs' argument that plaintiffs' claim was susceptible to

11

common proof: "Plaintiff does not identify a general policy maintained by Best Buy that resulted in late payments, or some method for sampling records to provide common proof that individual Best Buy managers acted unlawfully on a systemic basis." *Id.* at *8. Thus, the court concluded, "resolving each allegation will require an individualized assessment of each employee's time records, wage statements, and deposition testimony." *Id.*

As in *Harris*, because Plaintiff points to no policy or practice that caused any violations of California Labor Code §§ 201 and 203, evaluating Defendant's liability as to each class member would require individualized assessments of "each employee's time records, wage statements, and deposition testimony." *Harris*, 2018 WL 3932178, at *8. The factual disputes regarding Plaintiff's termination, which focus on the effective date of Plaintiff's termination, not Defendant's direct deposit practice, only reinforce the degree to which fact-intensive, individualized inquiries would predominate in determining Defendant's liability to Plaintiff and every single member of the proposed class. *See* Mot. at 8–10; Opp. at 14–15. In addition, evaluating whether Defendant "willfully" paid final wages late under California Labor Code § 203 also would require individualized inquiries into the circumstances of each employee's final wage payments. *See In re Taco Bell Wage & Hour Actions*, 2011 WL 449730, at *5 (E.D. Cal. Sept. 26, 2011) (denying certification of waiting time class in part because "[w]illfulness raises an inherently fact intensive inquiry focusing on state of mind and surrounding circumstances"). Therefore, Plaintiff has not satisfied Rule 23(a)(2)'s commonality requirement or Rule 23(b)(3)'s "even more demanding" predominance requirement. *Comcast*, 569 U.S. at 34.

**2. Typicality**

The individualized circumstances of Plaintiff's termination also mean that Plaintiff has failed to satisfy Rule 23(a)(3)'s typicality requirement. Rule 23(a)(3) requires plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting

12

*Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)). Here, no other class member's claims arise from "the same course of events" as Plaintiff's claim. Given that Plaintiff offers no evidence to suggest that Defendant's direct deposit practice led to Plaintiff's alleged late final wages, or that any other class member experienced similar circumstances, Plaintiff has not demonstrated that his claim is typical of the class as a whole. *See Sanchez v. Wal Mart Stores, Inc.*, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009) (denying certification for lack of a "'typical' claim or experience . . . that can be extrapolated classwide"). Therefore, Plaintiff has also not met Rule 23(a)(3)'s typicality requirement.

### 3. Adequacy

Lastly, Plaintiff has not satisfied Rule 23(a)(4), which requires "the representative parties [to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In the Ninth Circuit, to test the adequacy of a class representative, a court must answer two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020).

Plaintiff's own testimony reveals that Plaintiff has conflicts of interest with other potential class members. Plaintiff testified in his deposition that Plaintiff terminated at least three different employees and that he believes those employees did not timely receive their final wages because Plaintiff "didn't have a check" to hand the employees at the termination meeting. *See id.* 114: 4–6, 115:22–23, 116:12–20. Defendant notes that Plaintiff does not know whether those employees timely received their final wages through direct deposit or FedEx. Opp. at 23.

The root question for purposes of Rule 23(a)(4) is whether any conflict between Plaintiff and the class members might lead to inadequate representation. *Hughes v. WinCo Foods*, 2012 WL 34483, at *7 (C.D. Cal. Jan 4, 2012); *see also Hanlon*, 150 F.3d at 1020 ("Examination of potential conflicts of interest has long been an important prerequisite to class certification."). For example, in *Hughes*, the district court concluded that the named plaintiffs had a conflict of interest with other class members because the plaintiffs assigned "partial responsibility for labor law

13

Case No. 17-CV-07370-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1 violations to their supervisors, and simultaneously [sought] to represent said supervisors." 2012 WL 34483 at *7. Plaintiff contends that *Hughes* is distinguishable because Plaintiff's lawsuit focuses on Defendant's direct deposit practice and does not assign liability to supervisors like Plaintiff. Reply at 15.

However, as the Court explained above, Plaintiff has proffered no evidence that Defendant's practice alone can serve as common proof of Defendant's liability. Proving the class members' claims would require individualized assessments into the circumstances of each class member's final wage payments—and thus into the actions of supervisors like Plaintiff. As part of Defendant's effort to timely pay final wages, Defendant requires supervisors to consult with human resources regarding an employee's termination, complete an employee status form, and timely complete an employee's time card before termination. ECF No. 42-3, Ex. A (Managers Guide); Wiley Decl. ¶¶ 8–9. By Plaintiff's own testimony, Plaintiff terminated at least three class members. Thus, it is possible that if those employees failed to receive timely wages, Plaintiff's own actions—such as failing to complete a timecard before terminating an employee—may have contributed to that failure. *See Hadjavi v. CVS Pharmacy, Inc.*, 2011 WL 3240763, at *6 (C.D. Cal. July 25, 2011) (holding that a conflict of interest existed because the plaintiff supervisor "may have contributed to [another plaintiff's] inability to take his meal breaks"). Therefore, due to Plaintiff's conflict of interest with potential class members, Plaintiff has not satisfied Rule 23(a)(4)'s adequacy requirement.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for class certification.

**IT IS SO ORDERED.**

Dated:  December 20, 2018

_____
LUCY H. KOH
United States District Judge

14
Case No. 17-CV-07370-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION