UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAY DELGADO,<br><br>    Plaintiff,<br><br>v.<br><br>MARKETSOURCE, INC.,<br><br>    Defendant. | Case No. 17-CV-07370-LHK<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S PAGA CLAIM**<br><br>Re: Dkt. No. 52 |

Plaintiff Ray Delgado ("Plaintiff") brings suit against Defendant Marketsource, Inc. ("Defendant"). Plaintiff alleges that Defendant violated California Labor Code §§ 201 and 203. The Court previously denied Plaintiff's motion for class certification. ECF No. 46. Now before the Court is Defendant's motion to strike Plaintiff's claim for civil penalties under the California Private Attorney General's Act ("PAGA"), California Labor Code § 2698 *et seq*. Having considered the parties' briefing, the relevant law, and the record in this case, the Court DENIES Defendant's motion to strike Plaintiff's PAGA claim.

**I. BACKGROUND**

   **A. Factual Background**

Defendant is a company that "provide[s] outsource sales and marketing for other

companies." ECF No. 37-1, Ex. D, Deposition of Melissa Wiley ("Wiley Dep."), 25:16–18. In part, Defendant "employs individuals to sell cell phones out of kiosks at third-party retail stores." ECF No. 42-3, Declaration of Gary Slate ("Slate Decl."), ¶ 3. Defendant employed Plaintiff as a district manager from sometime in April 2013 until April 18, 2017. ECF No. 37-5, Declaration of Ray Delgado ("Delgado Decl."), ¶ 2. As a district manager, Plaintiff supervised employees of Defendant "who sold cellular phones inside of Target retail locations" in California. *Id.* ¶ 3. Plaintiff "was responsible for staffing these sales departments, as well as managing inventory and tracking supplies." *Id.* Plaintiff terminated at least three of Defendant's employees during Plaintiff's employment with Defendant. ECF No. 42-1, Ex. E, Deposition of Ray Delgado ("Delgado Dep."), 112:21–117:20; 134:10–22.

### 1. Defendant's Policies and Practices for Paying Final Wage Statements

Defendant pays its employees their wages via either electronic direct deposit or a paper check. Wiley Dep. 32:11–12. When Defendant fires an employee, Defendant distributes the employee's final paycheck through similar means, via either direct deposit or a paper check sent overnight with Federal Express ("FedEx"). *Id.* at 162:23–25. According to Defendant's published policies, Defendant pays fired employees their final wages "in accordance with state law." ECF No. 42-1, Ex. B; *see also* Wiley Dep. 135:2–15 (testifying that Defendant's practice is for a fired employee to "have a check that day"). California law requires Defendant to pay fired employees their final wages "immediately." Cal. Labor Code § 201.

In order to comply with California law, Defendant maintains the following policies and practices. Before a manager decides to terminate an employee, Defendant requires the manager to receive approval from Defendant's human resources department. ECF No. 42-4, Declaration of Melissa Wiley ("Wiley Decl."), ¶ 9. After that conversation, the manager must complete an Employee Status Form ("ESF"), which documents the employee's name, termination date, and the reason for the termination. Wiley Dep. at 149:1–18. Defendant's human resources department must authorize the ESF. *Id.* at 149:23–25. Eventually, the ESF is sent to Defendant's payroll department to prepare the employee's final paycheck. *Id.* at 150:2–6 (testifying that in California,

2

an ESF form is "flagged as high priority"); *see also* Wiley Decl. ¶ 10 (attesting that human resources consults on the employee's termination date so that Defendant's payroll department has the advance notice necessary to "compile all information necessary to pay the final wages on the last date of employment"). When Defendant pays final wages by direct deposit, the "final wages are typically . . . processed the day before the termination date such that the funds are in the employee's bank account on the last day of employment." Wiley Decl. ¶ 11. If the employee's use of direct deposit might delay an employee's receipt of final wages, or if the employee receives her regular wages by paper check, Defendant's practice is to issue a paper check and send it to the fired employee via overnight FedEx. *Id.*

Defendant's Managers Guide to Paying Hourly Employees also includes instructions regarding the payment of final wages. ECF No. 42-3, Ex. A ("Managers Guide"). The Managers Guide informs managers that "in some states"—including California—"an employee is due his or her final wages immediately upon termination." *Id.* at 1, 4. As a result, the Managers Guide instructs managers to contact human resources "as soon as possible . . . when the manager makes the decision to terminate an employee." *Id.* at 1. In addition, Plaintiff received an email from a payroll specialist reminding him to approve timecards for to-be-fired employees when submitting the ESF for those employees because "CA is immediate payout state." ECF No. 42-1, Ex. G. Finally, Defendant's payroll department maintains an internal document that lists "immediately" as the payout date for involuntarily terminated employees in California. ECF No. 42-4, Ex. C.

### 2. Plaintiff's Termination

On April 18, 2017, Plaintiff had a meeting with his supervisor, Gary Slate, at which Slate informed Plaintiff of his termination. Delgado Decl. ¶ 5. Plaintiff was fired for misconduct. ECF No. 37-1, Declaration of Nicholas Rosenthal ("Rosenthal Decl."), Ex. A (Defendant's record showing "misconduct" as reason). Plaintiff did not receive his final wage statement until April 19, 2017. Delgado Decl. ¶ 7; *see also id.*, Ex. A (Plaintiff's bank records). At this point, the parties' accounts of Plaintiff's termination diverge.

Plaintiff asserts that Plaintiff's termination was effective April 18, 2017. For support,

3

Case No. 17-CV-07370-LHK
ORDER DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S PAGA CLAIM

Plaintiff points to the ESF for Plaintiff's termination, which lists April 18, 2017 in the "effectiveDate" field. ECF No. 37-1, Ex. A.

Defendant contends that Plaintiff was terminated effective Wednesday, April 19, 2017. In an email sent before Plaintiff's termination, Plaintiff's manager, stated that "[t]he ESF and plan was for Wednesday." ECF No. 42-3, Ex. C. Slate had originally planned to meet with Plaintiff on Wednesday, but Plaintiff was unavailable that day, so Slate and Plaintiff instead met on Tuesday. *Id.*; Slate Decl. ¶ 8. Slate believes that he informed Plaintiff that Defendant was terminated effective April 19, 2017. Slate Decl. ¶ 10. Defendant also points to a confirmation email Slate received when first submitting Plaintiff's ESF on April 12, 2017, in which the effective date for Plaintiff's termination was listed as April 19, 2017. *Id.*, Ex. D. The email confirmation containing Plaintiff's ESF includes, as part of a "Termination Checklist," the instruction that "timely timecards are required so that we can ensure the processing of payroll remains compliant" for immediate payout states, including California. *Id.* (emphasis omitted).

### B. Procedural History

On November 30, 2017, Plaintiff filed a putative class action Complaint against Defendant in California Superior Court for the County of Santa Clara. ECF No. 1, Ex. 1 ("Compl."). Plaintiff's Complaint alleged claims for (1) failure to provide accurate itemized wage statements in violation of California Labor Code § 226(a); (2) failure to pay all wages owed immediately upon termination in violation of California Labor Code §§ 201, 203; and (3) civil penalties pursuant to PAGA. *Id.* ¶¶ 29–40.

On December 29, 2017, Defendant removed Plaintiff's Complaint to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332, 1453. ECF No. 1.

On August 1, 2018, the parties filed a stipulation to strike those portions of Plaintiff's complaint alleging that Defendant violated California Labor Code § 226(a). ECF No. 26. In addition, the parties stipulated to strike Plaintiff's § 226(a) allegations as a basis for Plaintiff's PAGA claim. *Id.* at 2. Then, on September 5, 2018, the parties filed a stipulation to dismiss Plaintiff's claim for violation of § 226(a) and to strike Plaintiff's §226(a) allegations from

4

1    Plaintiff's PAGA claim. ECF No. 33.

2    On September 24, 2018, Plaintiff filed a motion to certify a class of "All employees who
3    were employed by Defendant in the State of California at any time from November 30, 2016,
4    through the present, whose employment was terminated." ECF No. 37. On October 29, 2018,
5    Defendant filed an opposition. ECF No. 42. On November 19, 2018, Plaintiff filed his reply.
6    ECF No. 43.

7    On December 20, 2018, the Court denied Plaintiff's motion for class certification. ECF
8    No. 46. The Court concluded that Plaintiff failed to satisfy several of the requirements for class
9    certification under Federal Rule of Civil Procedure 23. *Id.* First, the Court concluded that
10   Plaintiff had not satisfied Rule 23(a)'s commonality requirement or Rule 23(b)(3)'s predominance
11   requirement because Plaintiff failed to identify any means of classwide proof given Defendant's
12   lawful policy to pay employees their final wages upon termination. *Id.* at 7–12. Second, the Court
13   concluded that Plaintiff failed to satisfy Rule 23(a)'s typicality requirement because Plaintiff
14   offered no evidence Defendants' direct deposit practice led to Plaintiff's alleged late wages or that
15   any other class member experienced similar circumstances. *Id.* at 12–13. Third, the Court
16   concluded that Plaintiff failed to satisfy Rule 23(a)'s adequacy requirement because Plaintiff was a
17   supervisor who himself had terminated other potential class members and who thus may have
18   contributed to other class members' receipt of late wages. *Id.* at 13–14.

19   On January 7, 2019, Defendant filed the instant motion to strike Plaintiff's PAGA claim as
20   unmanageable or, in the alternative, to deny representative status to Plaintiff's PAGA claim. ECF
21   No. 52 ("Mot."). On January 22, 2019, Plaintiff filed his opposition. ECF No. 56 ("Opp."). On
22   January 29, 2019, Defendant filed its reply. ECF No. 57 ("Reply").

23   **II.    LEGAL STANDARD**

24   Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an
25   insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A Rule
26   12(f) motion to strike serves "to avoid the expenditure of time and money that must arise from
27   litigating spurious issues by dispensing with those issues prior to trial." *SidneyVinstein v. A.H.*

28
5
Case No. 17-CV-07370-LHK
ORDER DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S PAGA CLAIM

*Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *see also Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds,* 510 U.S. 517 (1994).

Motions to strike "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation" or "unless prejudice would result to the moving party from denial of the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted). "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Id.* (citations omitted). "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Id.* "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of N.Y. Mellon*, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

## III. DISCUSSION

Plaintiff's complaint seeks civil penalties under PAGA for Defendant's alleged violations of California Labor Code §§ 201 and 203. Compl. ¶¶ 37–40. Plaintiff clarifies in his opposition to Defendant's motion to strike that Plaintiff seeks PAGA penalties only for Defendant's alleged violation of California Labor Code § 201. Opp. at 2. California Labor Code § 201 states, in relevant part, "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201(a).

Defendant contends that the Court should strike Plaintiff's PAGA claim for violation of California Labor Code § 201 because resolving Plaintiff's PAGA claim "would require more than 800 mini-trials" to address the individual circumstances of Defendant's payment of final wages to each employee Defendant has terminated since November 30, 2016. Mot. at 7. However, PAGA includes no such manageability requirement, and the Court will not strike Plaintiff's PAGA claim as unmanageable.

### A. PAGA Plaintiffs Need Not Satisfy Rule 23

Under PAGA, where the California Labor Code permits the State of California to recover

6
Case No. 17-CV-07370-LHK
ORDER DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S PAGA CLAIM

civil penalties, the civil penalty "may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees." Cal. Lab. Code § 2699(a). In other words, "PAGA plaintiffs are private attorneys general who, stepping into the shoes of the [state], bring claims on behalf of the state agency." *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014). "PAGA actions primarily seek to vindicate the public interest in enforcement of California's labor law." *Id.* PAGA actions also do not prevent nonparty employees from bringing separate actions for damages, unlike class actions under Federal Rule of Civil Procedure 23. *Id.* (citing Cal. Lab. Code § 2699(g)(1)).

Thus, the Ninth Circuit observed in *Baumann* that because a "PAGA suit is fundamentally different than a class action," a representative PAGA plaintiff need not meet all of the requirements for class action plaintiffs in Federal Rule of Civil Procedure 23. *Id.* (citation omitted). "A PAGA action is at heart a civil enforcement action filed on behalf of and for the state, not a claim for class relief." *Id.* at 1124. Similarly, the California Supreme Court held in *Arias v. Superior Court*, 46 Cal. 4th 969 (2009), that a PAGA plaintiff need not satisfy class action requirements. *Id.* at 975. Therefore, the Court's denial of Plaintiff's motion for class certification because Plaintiff did not satisfy Rule 23's requirements has little bearing on the viability of Plaintiff's PAGA claim.

**B. PAGA Does Not Impose A Manageability Requirement**

Many district courts in the Ninth Circuit have also held that PAGA includes no separate manageability requirement. *See, e.g.*, *Tseng v. Nordstrom, Inc.*, 2016 WL 7403288, at *5–6 (C.D. Cal. Dec. 19, 2016); *Zackaria v. Wal-Mart Stores, Inc.*, 142 F. Supp. 3d 949, 959 (C.D. Cal. 2015); *Zayers v. Kiewit Infrastructure W. Co.*, 2017 WL 7058141, at *8–9 (C.D. Cal. Nov. 9, 2017). Under PAGA, a PAGA plaintiff has the burden to prove violations for all employees the plaintiff seeks to represent, such that the absence of a "viable plan for proving violations as to all employees . . . merely means that [plaintiff] may ultimately be unable to prove [his] case." *Henderson v. JPMorgan Chase Bank*, 2013 WL 12126772, at *6 (C.D. Cal. July 10, 2013); *see*

7

*also Arias*, 46 Cal. 4th at 987 (holding that proof of a Labor Code violation is a prerequisite to recovery of PAGA penalties). As a result, "[t]o hold that a PAGA action could not be maintained because the individual assessments regarding whether a violation had occurred would make the claim unmanageable at trial would obliterate [PAGA's] purpose, because every PAGA action in some way requires *some* individualized assessment regarding whether a Labor Code violation has occurred." *Plaisted v. Dress Barn, Inc.*, 2012 WL 4356158, at *2 (C.D. Cal. Sept. 20, 2012).

Defendant points out that other district courts have struck representative PAGA claims as unmanageable even though the PAGA statute itself contains no explicit manageability requirement. The district court in *Patel v. Nike Retail Services, Inc.*, canvassed these cases, and observed that such courts "have been careful not to hold that PAGA actions can never be maintained wherever individual assessments are required." 2016 WL 7188011, at *3 (N.D. Cal. Dec. 12, 2016). Still, such courts have "conducted case-specific inquiries to determine whether a representative action would be manageable in each case." *Id.*

For example, the district court in *Ortiz v. CVS Caremark Corp.*, struck a representative PAGA claim as unmanageable where the plaintiffs requested PAGA penalties for off-the-clock work and unreimbursed gas mileage. 2014 WL 1117614, at *4 (N.D. Cal. Mar. 19, 2014). The *Ortiz* court concluded that plaintiffs' PAGA claim for unreimbursed gas mileage was unmanageable because proving the claim for each employee "would require highly individualized questions such as the make and vintage of each vehicle used, whether it was financed or leased and, if so, at what cost, and the type of fuel used." *Id.* at *5. Other courts have observed that even if PAGA imposes no manageability requirement, "a district court may strike a PAGA claim that is unmanageable as an exercise of its inherent authority." *Valadez v. CSX Intermodal Terminals, Inc.*, 298 F. Supp. 3d 1254, 1266 (N.D. Cal. 2018) (declining to strike the plaintiff's claims after concluding that a court may strike a PAGA claim as unmanageable).

The Court respectfully declines to follow those cases imposing a manageability requirement on PAGA plaintiffs. The manageability inquiry in *Ortiz* regarding "individualized questions" is strikingly similar to the predominance inquiry under Rule 23, in which a court "asks

8

whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). As such, a court may decline to certify a class under Rule 23 where resolving liability requires "a fact-intensive, individual analysis" into each employee's circumstances. *Vinole v. Countrywide Home Loans, Inc.*, 517 F.3d 935, 947 (9th Cir. 2009).

However, given the Ninth Circuit's and California Supreme Court's conclusions that PAGA plaintiffs need *not* meet class action requirements, the Court is disinclined to strike a *PAGA* claim because resolving the claim may require individualized inquiries. *See Baumann*, 747 F.3d at 1123 ("[A] PAGA suit is fundamentally different than a class action.") (citation omitted); *see also Zackaria*, 142 F. Supp. 3d at 958–59 (finding the defendant's manageability argument "inconsistent with PAGA's purpose and statutory scheme" because the manageability requirement "finds its genesis in Rule 23"). PAGA is not a procedural device akin to Rule 23. *Moua v. IBM Corp.*, 2012 WL 370570, at *3 (N.D. Cal. Jan. 31, 2012) ("[PAGA's] plain purpose is to protect the public interest through a unique private enforcement process, not to allow a collection of individual plaintiffs to sue the same defendant in one consolidated action for the sake of convenience and efficiency.").

Here, too, Defendant's motion to strike reveals that Defendant is, in essence, asking the Court to apply its Rule 23 analysis to Plaintiff's PAGA claim: "This motion is brought on the grounds that resolution of Plaintiff's PAGA claim is unmanageable as it would require more than 800 mini-trials to address the individualized issues the Court has already identified in denying Plaintiff's motion for class certification." Mot. at 2. As other courts have pointed out, while proving a PAGA claim necessarily involves some individual assessments of liability, a PAGA plaintiff will only recover for as many violations as he can prove:

> At trial, plaintiff may prove that defendant violated the California Labor Code with respect to the employees it describes as "aggrieved employees," some of the employees, or he may not prove any violations at all. But the fact that proving his claim may be difficult or even somewhat burdensome for himself and for defendant

9

Case No. 17-CV-07370-LHK
ORDER DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S PAGA CLAIM

does not mean that he cannot bring it at all.

*Zackaria*, 142 F. Supp. 3d at 959.

The Court is also persuaded not to impose a manageability requirement on PAGA claims because the California Supreme Court has repeatedly held that "the state's labor laws are to be liberally construed in favor of worker protection." *Alvarado v. Dart Container Corp.*, 4 Cal. 5th 542, 561–62 (2018) (citing *Mendoza v. Nordstrom, Inc.*, 2 Cal. 5th 1074, 1087 (2017)). PAGA is a California labor law enacted "to supplement enforcement actions by public agencies, which lack adequate resources to bring all such actions themselves." *Arias*, 46 Cal. 4th at 986. A liberal construction of PAGA weighs against reading a manageability requirement into the statute.

Therefore, because the Court concludes that PAGA imposes no manageability requirement, the Court declines to strike Plaintiff's PAGA claim.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to strike Plaintiff's PAGA claim.

**IT IS SO ORDERED.**

Dated: April 29, 2019

*Lucy H. Koh*
LUCY H. KOH
United States District Judge