UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAY DELGADO,<br><br>    Plaintiff,<br><br>v.<br><br>MARKETSOURCE, INC.,<br><br>    Defendant. | Case No. 17-CV-07370-LHK<br><br>**ORDER APPROVING SECOND AMENDED SETTLEMENT**<br><br>Re: Dkt. No. 84 |

Before the Court is Plaintiff's motion for approval of the second amended settlement. On August 15, 2019, the Court held a hearing on Plaintiff's motion. On August 26, 2019, Plaintiff filed a supplemental brief and the parties' amended settlement. On August 27, 2019, Plaintiff filed a second supplemental brief and the parties' second amended settlement. Having considered the parties' submissions, the arguments at the August 15, 2019 hearing, the relevant law, and the record in this case, the Court GRANTS Plaintiff's motion for approval of the second amended settlement.

## I. BACKGROUND

### A. Factual Background

Defendant "provide[s] outsource sales and marketing for other companies." ECF No. 37-

1, Ex. D ("Wiley Depo."), 25:16–18. Defendant employed Plaintiff as a district manager from April 2013 until April 18, 2017. ECF No. 37-5 ("Delgado Decl."), ¶ 2. Plaintiff supervised employees who sold cellular phones inside Target stores. *Id.* ¶ 3. Plaintiff "was responsible for staffing these sales departments, as well as managing inventory and tracking supplies." *Id.* Plaintiff terminated at least three of Defendant's employees during Plaintiff's employment with Defendant. ECF No. 42-1, Ex. E ("Delgado Depo."), 112:21–117:20; 134:10–22.

### 1. Defendant's Policies and Practices for Paying Final Wage Statements

Defendant pays its employees their wages via either electronic direct deposit or a paper check. Wiley Depo. 32:11–12. When Defendant fires an employee, Defendant distributes the employee's final paycheck through similar means, via either direct deposit or a paper check sent overnight with Federal Express ("FedEx"). *Id.* at 162:23–25. According to Defendant's policies, Defendant pays fired employees their final wages "in accordance with state law." ECF No. 42-1, Ex. B; *see also* Wiley Depo. 135:2–15 (testifying that Defendant's practice is for a fired employee to "have a check that day"). California law requires Defendant to pay fired employees their final wages "immediately." Cal. Labor Code § 201.

In order to comply with California law, Defendant maintains the following policies and practices. Before a manager decides to terminate an employee, Defendant requires the manager to receive approval from Defendant's human resources department. ECF No. 42-4 ("Wiley Decl."), ¶ 9. Then, the manager must complete an Employee Status Form ("ESF"), which documents the employee's name, termination date, and reason for termination. Wiley Depo. at 149:1–18. Defendant's human resources department must authorize the ESF. *Id.* at 149:23–25. Eventually, the ESF is sent to Defendant's payroll department to prepare the employee's final paycheck. *Id.* at 150:2–6. When Defendant pays final wages by direct deposit, the "final wages are typically . . . processed the day before the termination date such that the funds are in the employee's bank account on the last day of employment." Wiley Decl. ¶ 11. If using direct deposit might delay an employee's receipt of final wages, or if the employee receives her regular wages by paper check, Defendant issues a paper check and sends it to the fired employee via overnight FedEx. *Id.*

2

Defendant's Managers Guide to Paying Hourly Employees also includes instructions regarding the payment of final wages. ECF No. 42-3, Ex. A. The Managers Guide informs managers that "in some states"—including California—"an employee is due his or her final wages immediately upon termination." *Id.* at 1, 4. As a result, the Managers Guide instructs managers to contact human resources "as soon as possible . . . when the manager makes the decision to terminate an employee." *Id.* at 1. Plaintiff received an email from a payroll specialist reminding him to approve timecards for to-be-fired employees when submitting the ESF for those employees because "CA is immediate payout state." ECF No. 42-1, Ex. G. Finally, Defendant's payroll department maintains an internal document that lists "immediately" as the payout date for involuntarily terminated employees in California. ECF No. 42-4, Ex. C.

### 2. Plaintiff's Termination

On April 18, 2017, Plaintiff had a meeting with his supervisor, Gary Slate, at which Slate informed Plaintiff of his termination. Delgado Decl. ¶ 5. Plaintiff was fired for misconduct. ECF No. 37-1, Ex. A. Plaintiff did not receive his final wage statement until April 19, 2017. Delgado Decl. ¶ 7; *see also id.*, Ex. A (Plaintiff's bank records).

At this point, the parties' accounts of Plaintiff's termination diverge. Plaintiff asserts that Plaintiff's termination was effective April 18, 2017. Plaintiff points to the ESF for Plaintiff's termination, which lists April 18, 2017 in the "effectiveDate" field. ECF No. 37-1, Ex. A.

Defendant contends that Plaintiff was terminated effective Wednesday, April 19, 2017. In an email sent before Plaintiff's termination, Plaintiff's manager, Gary Slate, stated that "[t]he ESF and plan was for Wednesday." ECF No. 42-3, Ex. C. Slate had originally planned to meet with Plaintiff on Wednesday, but Plaintiff was unavailable that day, so Slate and Plaintiff instead met on Tuesday. *Id.* Slate believes that he informed Plaintiff that Defendant was terminated effective April 19, 2017. ECF No. 42-3 ("Slate Decl."), ¶ 10. Defendant also points to a confirmation email Slate received when first submitting Plaintiff's ESF on April 12, 2017, in which the effective date for Plaintiff's termination was listed as April 19, 2017. *Id.*, Ex. D. The email confirmation containing Plaintiff's ESF includes, as part of a "Termination Checklist," the

3

Case No. 17-CV-07370-LHK
ORDER APPROVING SECOND AMENDED SETTLEMENT

instruction that "timely timecards are required so that we can ensure the processing of payroll remains compliant" for immediate payout states, including California. *Id.* (emphasis omitted).

**B. Procedural History**

On November 30, 2017, Plaintiff filed a putative class action complaint against Defendant in California Superior Court for the County of Santa Clara. ECF No. 1, Ex. 1 ("Compl."). Plaintiff's complaint alleged claims for (1) failure to provide accurate itemized wage statements in violation of California Labor Code § 226(a); (2) failure to pay all wages owed immediately upon termination in violation of California Labor Code §§ 201, 203; and (3) civil penalties pursuant to California's Private Attorney General's Act ("PAGA"). *Id.* ¶¶ 29–40.

On December 29, 2017, Defendant removed Plaintiff's complaint to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332, 1453. ECF No. 1.

On August 1, 2018, the parties stipulated to strike those portions of Plaintiff's complaint alleging that Defendant violated California Labor Code § 226(a). ECF No. 26. In addition, the parties stipulated to strike Plaintiff's § 226(a) allegations as a basis for Plaintiff's PAGA claim. *Id.* at 2. Then, on September 5, 2018, the parties stipulated to dismiss Plaintiff's § 226(a) claim and to strike Plaintiff's §226(a) allegations from Plaintiff's PAGA claim. ECF No. 33.

On December 20, 2018, the Court denied Plaintiff's motion for class certification. ECF No. 46.

On April 29, 2019, the Court denied Defendant's motion to strike Plaintiff's PAGA claim. ECF No. 66.

On May 9, 2019, the parties filed a notice that the parties had resolved this action in its entirety. ECF No. 77. On May 10, 2019, the parties stated that the parties intended to file a stipulation to approve the parties' PAGA settlement. ECF No. 79.

On June 24, 2019, Plaintiff filed the instant motion for settlement approval. ECF No. 84 ("Mot."). On August 15, 2019, the Court held a hearing on Plaintiff's motion for settlement approval. ECF No. 98. At the hearing, the Court expressed concern that the release in the settlement appears to release PAGA claims not predicated on a violation of California Labor Code

4

§ 201. ECF No. 97 at 1–2. The parties agreed that clarification of the scope of the release would be helpful. *Id.* at 2. The parties also agreed to revise how the settlement allocates the settlement funds as between PAGA penalties and attorney's fees and costs. *Id.*

On August 26, 2019, Plaintiff filed an amended settlement, supplemental brief, receipts or invoices for all expenses, and Plaintiff's attorney Kristin Agnew's contemporaneous billing records. ECF No. 99. On August 27, 2019, Plaintiff filed a second amended settlement and second supplemental brief. ECF Nos. 101 & 102.

## II. DISCUSSION

### A. Settlement Approval

"An employee bringing a PAGA action does so as the proxy or agent of the state's labor law enforcement agencies, . . . who are the real parties in interest." *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (internal citations omitted). Thus, "[a]n action brought under the PAGA is a type of qui tam action." *Id.* at 429. Because a PAGA action is brought as a proxy for law enforcement agencies, "[t]here is no requirement that the Court certify a PAGA claim for representative treatment like in Rule 23 . . . ." *Villalobos v. Calandri Sonrise Farm LP*, 2015 WL 12732709, at *5 (C.D. Cal. July 22, 2015). However, because a settlement of PAGA claims compromises a claim that could otherwise be brought by the state, the PAGA provides that "court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA]." Cal. Labor Code § 2699(l)(2).

A party seeking approval of a PAGA settlement must simultaneously submit the proposed settlement to the LWDA to allow the LWDA to comment on the settlement if the LWDA so desires. The PAGA also states that courts may exercise their discretion to lower the amount of civil penalties awarded "if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Labor Code § 2699(e)(2). Because state law enforcement agencies are the "real parties in interest" for PAGA claims, the Court's task in reviewing the settlement is to ensure that the state's interest in enforcing the law is upheld. *Sakkab*, 803 F.3d at 435.

1    Other than the provisions discussed above, the PAGA does not establish a standard for
2 evaluating PAGA settlements. Indeed, the LWDA has stated that "[t]he LWDA is not aware of
3 any existing case law establishing a specific benchmark for PAGA settlements, either on their own
4 terms or in relation to the recovery on other claims in the action." *Ramirez v. Benito Valley
5 Farms, LLC*, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017) (quoting LWDA Response at 3,
6 *O'Connor v. Uber Techs.*, No. 13-CV-03826-EMC, Docket No. 736 (N.D. Cal. July 29, 2016)).
7 Ultimately, "neither the California Supreme Court, nor the California Courts of Appeal, nor the
8 [LWDA] has provided any definitive answer as to what the appropriate standard is for approval of
9 a PAGA settlement." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal.
10 2019) (quoting *Jordan v. NCI Grp., Inc.*, 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018)).

Given the lack of an express standard, several courts, including this Court, have applied several of the factors in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), to evaluate a PAGA settlement. *Ramirez*, 2017 WL 3670794, at *3; *see O'Connor v. Uber Techs.*, 201 F. Supp. 3d. 1110, 1134 (N.D. Cal. 2016) (applying *Hanlon* factors to parties' PAGA settlement); *Rodriguez v. RCO Reforesting, Inc.*, 2019 WL 331159, at *4 (E.D. Cal. Jan. 25, 2019) (same); *Patel v. Nike Retail Servs., Inc.*, 2019 WL 2029061, at *2 (N.D. Cal. May 8, 2019) (same).

The *Hanlon* factors, which are used to evaluate class action settlements, include (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the expertise and views of counsel; (7) the presence of government participation; and (8) the reaction of class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026. Many of these factors are not unique to class action lawsuits and bear on whether a settlement is fair and has been reached through an adequate adversarial process. Thus, the Court finds that these factors are useful in evaluating a PAGA settlement. However, three of the *Hanlon* factors—risk of maintaining class action status, presence of a governmental participant, and reaction of class members—are not relevant to a PAGA settlement that is not a class action and in which the LWDA is not involved.

6

Case No. 17-CV-07370-LHK
ORDER APPROVING SECOND AMENDED SETTLEMENT

United States District Court
Northern District of California

For these reasons, the Court evaluates the second amended settlement in light of the PAGA requirement that the award not be "unjust, arbitrary and oppressive, or confiscatory." Cal. Labor Code § 2699(e)(2). The Court also considers the five relevant *Hanlon* factors.

### 1. "Unjust, Arbitrary and Oppressive, or Confiscatory" as to Defendant

This factor favors approval of the second amended settlement. There is no indication that the second amended settlement would be "unjust, arbitrary and oppressive, or confiscatory." Cal. Labor Code § 2699(e)(2). To the contrary, in the mediation process and the resulting second amended settlement, the parties recognized the potential burden of additional litigation. Defendant settled rather than continue litigating what Defendant views as an "exceedingly small matter." *See* ECF No. 88 at 2.

### 2. Strength of Plaintiff's Case

This factor favors approval. Courts have noted that legal uncertainty favors approval of a settlement. *See, e.g., Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007) ("[L]egal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval."). The Court denied Plaintiff's motion for class certification and Defendant's motion to strike the PAGA claim, but the merits of Plaintiff's final wage allegations have not been tested. Moreover, the parties continue to dispute the circumstances of Plaintiff's termination. *See* Mot. at 13.

### 3. Risk, Expense, Complexity, and Likely Duration of Further Litigation

This factor favors approval. Although the parties have engaged in motion practice to date, the parties settled before more expansive discovery occurred and, specifically, before Defendant was to provide PAGA-related discovery related to 25 employees terminated during the PAGA period. *See* ECF No. 71. Even if Plaintiff were to prove his PAGA claim for all employees, there is a risk that the Court could reduce PAGA penalties under California Labor Code § 2699(e)(2). Plaintiff could also fail to recover any penalties for eligible employees or the LWDA. *See* Agnew Decl. ¶¶ 18–21. For both parties, because the maximum value of the PAGA claim is $96,300, as explained in more detail below, continued litigation presents an expense not commensurate with

7

Case No. 17-CV-07370-LHK
ORDER APPROVING SECOND AMENDED SETTLEMENT

the potential recovery. ECF No. 88 at 2. Thus, the second amended settlement provides a timely, certain, and meaningful recovery.

### 4. Amount of Second Amended Settlement

This factor favors approval. In a declaration, Plaintiff's attorney explains that the total valuation of Plaintiff's PAGA claim is $96,300. Agnew Decl. ¶ 17. There are a maximum of 963 employees eligible for PAGA penalties. Second Amended Settlement ¶ 1. Under PAGA, employees are eligible to recover $100 for an initial violation and $200 for a subsequent violation. Cal. Labor Code § 2699(f)(2). However, because the alleged violation in this case relates to payment of final wages, each employee was likely terminated only once and is entitled to penalties for only one violation. *See* Mot. at 14. Therefore, the maximum recovery per employee is $100, for a total of $96,300.

Pursuant to the second amended settlement, Defendant will pay a total of $83,075, of which at least $45,252.98 are allocated to PAGA penalties. Thus, the second amended settlement provides for approximately $46.99 in PAGA penalties per employee, or a recovery equivalent to almost 47% of the PAGA claim's total valuation.

The Court also approves up to $4,000 for settlement administration costs. The second amended settlement provides that if settlement administration costs fall below $4,000, any residual funds will be paid toward PAGA penalties. Second Amended Settlement ¶ 5.5. Thus, the amount of PAGA penalties could be even higher.

Courts have "raised concerns about settlements of less than 1% of the total value of a PAGA claim." *Haralson*, 383 F. Supp. 3d at 973 (quoting *Jennings v. Open Door Mktg., LLC*, 2018 WL 4773057, at *9 (N.D. Cal. Oct. 3, 2018)). Nonetheless, some courts have approved PAGA recoveries in that range. *See, e.g.*, *McLeod v. Bank of Am., N.A., 2018 WL 5982863*, at *4 (N.D. Cal. Nov. 14, 2018) (approving PAGA settlement totaling 1.1% of total value). By contrast, the second amended settlement provides for penalties of almost 47% of Plaintiff's total valuation for the PAGA claim, and that amount could be even higher if settlement administration costs fall below $4,000. Moreover, although courts have raised concerns about PAGA settlements where

8

Case No. 17-CV-07370-LHK
ORDER APPROVING SECOND AMENDED SETTLEMENT

the LWDA filed objections, *see O'Connor*, 201 F. Supp. 3d at 1135, Plaintiff filed his proposed settlement with the LWDA, and the LWDA has not filed any response. Therefore, the amount of the second amended settlement weighs in favor of approval.

### 5. Extent of Discovery Completed and Stage of the Proceedings

This factor weighs in favor of approval. The parties have completed significant discovery and litigated both a motion for class certification and a motion to strike the PAGA claim. *See* ECF Nos. 46, 56. Thus, both sides had a well-developed sense of the risks and benefits of continued litigation.

### 6. Experience and Views of Counsel

This factor favors approval. The parties here are represented by competent and experienced counsel who favor settlement. Plaintiff's primary attorney has litigated employment cases for 10 years and favors settlement because there are "legitimate open questions as to several issues" in the litigation. Agnew Decl. ¶ 18. Defendant favors settlement because the case is an "exceedingly small matter," in Defendant's view. ECF No. 88 at 2. Therefore, the views of counsel favor settlement.

### 7. Conclusion

Thus, each of the six relevant factors discussed above favors approval. The settlement of the PAGA claim in the instant case for a total of $83,075 was reached only after multiple rounds of motion practice, substantial discovery, and negotiations involving counsel with significant experience in employment cases. Additionally, the $45,252.98 allocated to PAGA penalties represents a significant percentage of the employees' possible recovery and vindicates California state law enforcement agencies' interest in enforcing the law. Moreover, the amount of PAGA penalties could be even higher if settlement administration costs fall below $4,000. For these reasons, the Court finds that the second amended settlement is fair and reasonable and promotes the purposes of PAGA. Therefore, the Court GRANTS Plaintiff's motion for approval of the second amended settlement.

### B. Attorney's Fees and Costs

The Court also finds that an award of $20,768 for attorney's fees and $8,053.27 for costs is warranted. The PAGA provides that "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal. Labor Code § 2699(g)(1). PAGA does not provide a specific standard for evaluating attorney's fees in connection with a PAGA settlement. However, the lodestar method is a well-established method for determining the reasonableness of an attorney's fee award. *See, e.g.*, *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *8 (N.D. Cal. June 5, 2017); *Ramirez*, 2017 WL 3670794, at *6 (applying lodestar approach to parties' request for attorney's fees in PAGA settlement).

Therefore, the Court applies the lodestar method in determining whether the requested attorney's fees are reasonable in the instant case. Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

Under the Civil Local Rules for United States District Court for the Northern District of California, a motion for attorney's fees and costs must include (1) the number of hours spent on the litigation by each biller, (2) detailed billing records showing how much time was spent on each task, and (3) each biller's billable rate and justification for such rate. Civ. L. R. 54-5(b).

Plaintiff requests an award of $20,768.75 in attorney's fees or 25% of the total settlement fund, which is $83,075. ECF No. 99 at 3. Plaintiff's counsel reports a lodestar of $104,975 for 161.7 hours worked by a single attorney, Kristin Agnew. Agnew Decl. ¶ 32. Plaintiff's counsel represents that although other attorneys, legal clerks, and paralegals spent "dozens of hours" on the case, Plaintiff's counsel does not include those hours in the lodestar calculation "because the lodestar of just myself [Ms. Agnew] comprises enough billable time as to reach a lodestar cross-check amount roughly equivalent to the amount of attorney's fees being requested." *Id.* at n.1.

Plaintiff has provided information regarding Ms. Agnew's education and experience. Agnew Decl. ¶¶ 24–30. Having reviewed this information, the Court finds that Ms. Agnew's

10

Case No. 17-CV-07370-LHK
ORDER APPROVING SECOND AMENDED SETTLEMENT

1    education and experience justifies her billing rate.  Plaintiff has also provided detailed billing

2    records for Ms. Agnew that indicate that the hours spent on the instant litigation were justified.

3    Agnew Supp. Decl., Ex. C.  In addition, Ms. Agnew's lodestar alone is sufficient to make the

4    requested $20,768.75 in attorney's fees reasonable.  Specifically, Ms. Agnew's lodestar totals

5    $104,975.  Thus, the requested $20,768.75 represents a negative multiplier of 19.8%, and

6    represents a significant discount from Plaintiff's lodestar.  Furthermore, Ms. Agnew's lodestar

7    does not account for work performed after Plaintiff filed the motion for preliminary approval or

8    for the "dozens of hours" that other attorneys and staff spent working on the instant case.

9    Therefore, the Court finds that the requested attorney's fees award is justified.

10   Plaintiff's counsel also requests reimbursement for $9,105.05 in costs, which Plaintiff

11   contends are justified by receipts and invoices attached to Ms. Agnew's supplemental declaration.

12   Agnew Supp. Decl. ¶ 6; *see id.*, Exs. E & F.  Although most of Plaintiff's costs are justified, the

13   Court will not approve reimbursement of Plaintiff's counsel's business class airplane ticket from

14   Los Angeles to San Jose, which cost $493.96.  The Court will also not approve reimbursement of

15   Plaintiff's counsel's August 15, 2018 stay at The Fairmont San Jose, which is perhaps the most

16   expensive hotel in San Jose.  The base rate for Plaintiff's counsel's one-night stay was $479 and

17   the total charges for one night were $558.28.  *See* Agnew Supp. Decl., Ex. F.  Although the Court

18   will approve reimbursement of Plaintiff's counsel's September 17, 2018 stay at The Fairmont San

19   Jose, which cost a base rate of $336, the Court encourages Plaintiff's counsel to seek more

20   reasonably priced accommodations in San Jose in the future.  With the above deductions, the

21   Court approves reimbursement to Plaintiff's counsel for $8,053.27 in costs.

22   Plaintiff has achieved a result that vindicates the state's interest in enforcing wage and hour

23   laws, as Defendant has agreed to pay a total of $83,075, with at least $45,252.98 paid as civil

24   penalties under PAGA.  The amount of PAGA penalties could be even higher if settlement

25   administration costs fall below $4,000.  Additionally, Plaintiff's counsel devoted significant

26   resources to the task of litigating this case.  For these reasons, the Court finds that an award of

27   $20,768.75 for attorney's fees and $8,053.27 for costs is reasonable within the meaning of

28
11

California Labor Code § 2699(g)(1).  Therefore, the Court awards Plaintiff's counsel a total of $28,822.02 for attorney's fees and costs.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for approval of the second amended settlement.

**IT IS SO ORDERED.**

Dated: August 28, 2019

_____
LUCY H. KOH
United States District Judge